UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DARRYL KNOWLES**                                                                                                                        **PLAINTIFF**

v.                                                                                                                                                     **NO. 5:20-cv-26-BJB**

**WAL-MART STORES EAST, L.P., ET AL.**                                                                           **DEFENDANTS**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Darryl Knowles slipped and fell while exiting the Wal-Mart in Mayfield, Kentucky. Complaint (DN 1-2) ¶¶ 7–8. Afterwards, Knowles received medical treatment for injuries that he alleges were caused by the fall. Response (DN 43) at 2. To compensate for his pain, suffering, and medical expenses, Knowles accused Wal-Mart of negligence and sued for damages. Complaint ¶ 16.

To prove causation, Knowles identified Dr. Philip Hunt, one of his treating physicians, as an expert witness. Plaintiff Expert Disclosure (DN 40-20) at 1–2. Dr. Hunt treated Knowles for injuries to his left elbow and right knee. *Id.* at 1. Wal-Mart moved to exclude Dr. Hunt's opinion testimony as inappropriately speculative under Federal Rule of Evidence 702. DN 40. The Court agrees and excludes Dr. Hunt's testimony regarding the cause of Knowles's injuries.

### I.   Speculative Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise …" so long as the testimony satisfies four requirements:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Sixth Circuit has interpreted Rule 702, as elaborated by the *Daubert* line of cases, to interpose a three-part requirement: (1) the witness must be qualified (by

1

knowledge, skill, experience, training, or education); (2) the testimony must be relevant (helpful to the trier of fact in understanding evidence or determining facts); and (3) the testimony must be reliable (based on sufficient facts or data and reliable principles and methods reliably applied). *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Rule 702). The proponent of the expert bears the burden of establishing that the testimony meets those requirements by a preponderance of the evidence. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

To offer opinion as well as fact testimony, a treating physician such as Dr. Hunt likewise must meet the *Daubert* requirements: the district court must consider "(1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology properly could be applied to the facts at issue to aid the trier of fact." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) (quoting *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)).

Knowles complains of two injuries: one to his right knee and another to his left elbow. *See* Response at 2–3. In addition to personally treating Knowles, Hunt Deposition (DN 43-2) at 9:1–4, Dr. Hunt also reviewed Knowles's medical record, *id.* at 5:9–11, analyzed results from a nerve-conduction study and an MRI, *id.* at 9:13–15, and spoke with Knowles's physical therapist, *id.* at 15:14–20. As to the knee, Dr. Hunt opined that the "medial meniscus tear … and the arthritic narrowing in [Knowles's] knee were preexisting, *probably exacerbated by falling but not the primary cause* of the pathology." *Id.* at 10:10–14 (emphasis added). And as to the elbow, Dr. Hunt took Knowles's account at "face value" and concluded that "it's *possible* that a fall straining or stretching the elbow could aggravate the nerve" because Knowles had reported "no issues with his ulnar nerve prior to falling." *Id.* at 10:15–21.

This is mere speculation, according to Wal-Mart: Dr. Hunt relied on Knowles's self-reporting, didn't examine Knowles before the fall, and didn't consider whether any of Knowles's preexisting conditions contributed to the injuries. Motion at 12. In other words, the fact that Dr. Hunt's testimony is "based solely on Plaintiff's word," means it "should be excluded." *Id.* at 13. This calls into question the reliability of Dr. Hunt's proposed testimony because his "principles and methods" consist primarily of relying on what Knowles said, rather than his own assessment of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quotation omitted).

In considering reliability, trial judges may consider factors such as "(1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Gilmore v. Lowe's Home Centers, Inc.*, No. 4:11-cv–44, 2013 WL 4648315, at *2 (W.D. Ky. Aug. 29, 2013)

(quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993)). Whether and how a judge applies these factors "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotation omitted).

### A. The Knee Injury

Dr. Hunt did not submit an expert report, *see* FED. R. CIV. P. 26(a)(2)(B)–(C), but did offer deposition testimony. In response to Wal-Mart's questions regarding the cause of the knee injury, Dr. Hunt originally surmised that the fall "probably exacerbated … but [was] not the primary cause of the pathology in his knee." Hunt Depo. At 10:10–14. That pathology, he explained, was "degenerative"—the result of "[a]ging, wear and tear." *Id.* at 10:11, 25. When asked to clarify how a fall would affect a "degenerative condition," like Knowles's meniscus tear, Dr. Hunt stated that a "strain, sprain, torque on a joint that's already got some underlying degenerative change … *can* certainly aggravate it, stir it up, just like it could a normal knee." *Id.* at 11:3–8 (emphasis added). Dr. Hunt also reviewed an MRI of the right knee that "basically showed some degenerative tearing in the medial meniscus, some arthritic changes." *Id.* at 9:22–25. It's not clear that Dr. Hunt could or did specify which conditions (or portions thereof) he ascribed to the fall as opposed to preexisting ailments. The most he could tell Knowles, apparently, was "that he[] [had] degenerative arthritic change, degenerative condition in his knee, and that the fall certainly *could have* exacerbated it." *Id.* at 11: 12–15 (emphasis added). Whether Dr. Hunt believes it did in fact contribute, or why, remains unclear.

Assessing what if any aspects of Knowles's knee condition are attributable to the fall, rather than other causes, is presumably the basic point of this expert opinion. Yet Dr. Hunt's testimony would not help a jury answer that question. *See* FED. R. EVID. 702(a). Like the doctor in *Alexander v. Smith & Nephew, P.L.C.*, Dr. Hunt's methodology is unreliable because he "fail[ed] to … distinguish symptoms [plaintiff] suffered before [a] surgery from those he attributes to" the defendant's involvement. 98 F. Supp. 2d 1299, 1305 (N.D. Okla. 2000).

Knowles makes much of Dr. Hunt's assertion that he reached his opinion with "a reasonable degree of medical probability." Response at 8; Hunt Depo. at 21:7–10. These words do not insulate a medical opinion from scrutiny under *Daubert*, however. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (The phrase "with a reasonable degree of medical certainty … does not make a causation opinion admissible."); *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1357, 1360 (6th Cir. 1992) (causation testimony without sufficient support is nothing "more than a personal belief or opinion"). Because Dr. Hunt's testimony regarding the cause of the condition and its exacerbation is largely speculation, a jury would lack any basis—besides its own speculation—for adopting Dr. Hunt position's on causation. Absent a reliable principle or method to support the view that the fall exacerbated Knowles's preexisting injuries, the Court must exclude Dr. Hunt's opinion.

### B. The Left Elbow

Dr. Hunt concluded that the fall "possibl[y]" injured the ulnar nerve at Knowles's left elbow because he reported no symptoms before the fall. Hunt Depo. at 10:15–21. Dr. Hunt also reviewed a nerve-conduction study of Knowles's left elbow, which in his view "suggested that there was some aggravation of the ulnar nerve at the elbow." *Id.* at 9:18–19. When questioned about whether falling is a typical cause of ulnar neuritis, Dr. Hunt admitted "that's not the typical history for people who come in with ulnar neuritis." *Id.* at 24:13–15. "Normally," he explained, the condition afflicting Knowles "comes on for no particular reason." *Id.* at 24:15–16. But here Dr. Hunt gave Knowles "the benefit of the doubt" because he "take[s] people at face value." *Id.* at 24:8–12.

This is a problematic approach to opinion testimony under the Federal Rules. Expert witnesses are not (or at least shouldn't be) mere conduits for the fact testimony of others; adding expertise that helps the jury understand evidence is what permits them to offer opinion testimony. But here Dr. Hunt's expertise would add little if anything to Knowles's self-reporting that he had new elbow pain after the fall: a juror who heard Dr. Hunt's testimony would have no greater basis to infer a causal relationship between the fall and the nerve injury than a juror who heard Knowles alone. *See Snowden v. Speedway LLC*, No. 5:18-cv-425, 2021 WL 5625548, at *5 (E.D. Ky. Nov. 30, 2021) (expert report that "relies extensively on [plaintiff's] self-report" and fails to describe a "valid methodology" amounts to inadmissible speculation). Indeed, Dr. Hunt's testimony principally offers a reason why a juror should *not* ascribe Knowles's ulnar neuritis to the fall: the condition usually develops for no particular reason. Hunt Depo. at 24:15–16. Yet Knowles merely assumes, rather than explains, that the fall aggravated a preexisting condition: "*if* Mr. Knowles was suffering from a latent pre-existing condition of his left elbow, then Dr. Hunt makes clear that the fall exacerbated that condition." Response at 10 (emphasis added).

And even if Dr. Hunt had independent reasons to conclude that Knowles accurately characterized the timing of his symptoms, an expert witness should not simply infer causation from correlation, at least not without considering and ruling out other potential causes. *See Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 473 (6th Cir. 2006) ("Expert opinions based upon nothing more than the logical fallacy of *post hoc ergo propter hoc* typically do not pass muster under *Daubert*."). Accordingly, the Court must exclude this causation testimony as well. *See Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x 359, 361 (6th Cir. 2014) (district court's exclusion of expert's "unexplained conclusion" as unreliable was not error).

4

## II. Legal Insufficiency of Knowles's Causation Evidence

Wal-Mart also asserts that "the Court must determine whether Dr. Hunt's testimony satisfies Plaintiff's burden to show the causal relationship between Plaintiff's fall" and "his nerve entrapment[,] … nerve transposition surgery," and "knee injection." Reply (DN 45) at 1; *see also* Motion at 13–14. Kentucky law, as Wal-Mart notes, generally requires plaintiffs to show a causal relationship that "is medically probable, not merely possible." Reply at 2 (citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)).

To the extent Wal-Mart argues that a court must exclude a witness because his testimony does not *by itself* carry the proponent's evidentiary burden, that would amount to a non sequitur. *Cf. City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563–64 (11th Cir. 1998) (proposed expert "testimony need only have 'assist[ed] the trier of fact to understand the evidence or to determine a fact in issue.'" (quoting Rule 702)). This confuses the summary-judgment and *Daubert* standards. Wal-Mart hasn't moved for summary judgment. (Though its *Daubert* motion curiously asserts summary judgment would be appropriate with *or* without Dr. Hunt's testimony. Motion at 2, 14.) Nor has it moved to exclude the testimony of the other expert witness Knowles disclosed regarding causation—treating physician Dr. Dobrose. *See* Response at 3; Plaintiff Expert Disclosures at 2 (disclosing that Dr. Christopher Dobrose is "expected to testify" on causation). Particularly because this Order excludes Dr. Hunt's testimony on reliability grounds, the Court has no reason to consider, in the alternative, whether Dr. Hunt's testimony, standing alone, is legally insufficient.

Nor does the Court now have any basis to consider, without briefing or evidentiary citations, whether summary judgment is warranted. The Sixth Circuit has cautioned against converting an evidentiary motion into a summary-judgment request: doing so could deprive the movant's "opponents of the procedural protections that attach at summary judgment." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013).

### ORDER

The Court grants Wal-Mart's motion to exclude Dr. Hunt's testimony on causation (DN 40).

Benjamin Beaton, District Judge
United States District Court

March 1, 2022